IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SPENCER PEARCE,                )
                               )
          Plaintiff,           )
                               )   Civil Action No. 2:16-cv-438
v.                             )
                               )   Judge Mark R. Hornak
BOROUGH OF GLASSPORT, *et al.*, )
                               )
          Defendants.          )

## **OPINION**

**Mark R. Hornak, United States District Judge**

### I. **BACKGROUND**

On November 12, 2011, Jennifer Piccini suffered a gunshot wound to the head in the parking lot of the Borough of Glassport police station. She was pronounced dead soon thereafter at UPMC McKeesport Hospital. This case arose from the events leading up to, and following, the shooting.

On November 12, 2013, Spencer Pearce (Ms. Piccini's son) filed a Writ of Summons in Pennsylvania state court. On March 7, 2016, he was granted Letters of Administration *Pendente Lite* on Ms. Piccini's Estate. ECF No. 1-3, at 9 ¶ 37; ECF No. 20-1. Thereafter, on March 16, 2016 Pearce filed a complaint in the state court case, after having been "ruled" by the Defendants to do so. The Defendants, Borough of Glassport, Michael Piccini (Jennifer's husband), and Nicholas Caito, removed the case to this Court. ECF No. 1, dated April 14, 2016.

Briefly, Pearce alleges that Michael and Jennifer Piccini were involved in a personal argument in the Borough of Glassport police station parking lot. ECF No. 1-3, at 1. Michael Piccini—a Glassport police officer—left and sometime later Jennifer Piccini (while in the parking lot) produced a gun and pointed it at her own head, with her finger on the trigger.

Another police officer, Defendant Nicholas Caito, confronted Ms. Piccini and aimed his TASER at her. *Id.* Thereafter, Michael Piccini returned to the parking lot and ordered Caito to fire his TASER at Jennifer Piccini. *Id.* Caito did so, and at or near the same time, Jennifer Piccini's gun fired, with the round striking her in the head. *Id.* Pearce alleges that the officers' conduct unlawfully caused Ms. Piccini's death, namely that Tasering her while she had a gun pointed at her head with her finger on the trigger had but one inevitable result: causing her muscles to contract which in turn made her fire the gun.

Pearce brings nine counts. *Id.* at 10–18. Counts I-V are brought under 42 U.S.C. § 1983 and allege violations of various federal constitutional rights. Count VI is a wrongful death claim under Pennsylvania law. Count VII is generally called a "Survival Action." Counts VIII and IX are for assault and battery and civil conspiracy under state law. *Id.* The Defendants moved to dismiss all of the claims, arguing that there are procedural bars preventing recovery. ECF No. 7. For the reasons stated in this Memorandum Opinion, that Motion will be granted in part and denied in part, all without prejudice.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of cases that fail to state a claim upon which relief can be granted. A court must accept all well-pleaded facts as true, in the light most favorable to the plaintiff, but should disregard legal conclusions. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Then, the court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## III. ANALYSIS

The Court will begin by discussing the survival claims followed by the wrongful death claim. The Court will also address qualified immunity.

### a. Survival Claims

Counts I-V (the § 1983 claims), Count VII (styled "survival action"),[1] Count VIII and Count IX (the state law tort claims) are "survival" claims that can be brought by a decedent's estate, on behalf of the decedent. *See Frey v. Penn. Elec. Co.*, 607 A.2d 796, 798 (Pa. Super. Ct. 1992). The Defendants argue that (1) Spencer Pearce did not establish constitutional violations against him in his individual capacity; (2) Spencer Pearce lacked and lacks standing to assert all claims and an amendment now is prohibited under Pennsylvania law; and (3) the Defendants are entitled to qualified immunity. ECF No. 8.

First, it is true that Spencer Pearce, in his individual capacity as Spencer Pearce, cannot establish § 1983 claims for violations of his own constitutional rights because his rights were not violated. However, it is clear from the face of the Complaint that Spencer Pearce brings the § 1983 claims (and all of the other survival claims) on behalf of his mother. *See* ECF No. 1-3, at 10–18. Each of those claims is brought by Mr. Pearce "as trustee ad litem and as Personal Representative of the Estate of Jennifer Piccini." *Id.* The caption itself is not so-styled, but the causes of action are clearly not being brought by Spencer Pearce in his individual capacity, and are so denominated in the Complaint.

This leads to the Defendants' second argument: that is that Mr. Pearce lacks standing because he is suing in his individual capacity. ECF No. 8, at 7. As explained in the previous paragraph, that is a cramped argument that seeks formalistic dismissal of the entire case just

---

[1] "Survival action" is not a standalone cause of action so it will be dismissed without prejudice as duplicative.

because a title is missing from the caption (and even though Mr. Pearce is attempting to sue in the proper capacity).[2]

The Defendants further argue that amending the caption to indicate that Mr. Pearce is not suing in his individual capacity is not allowed because the statute of limitations has run. *Id.* at 9. The statute of limitations for the survival claims (both § 1983 and state law tort claims) is two years. *See* 42 Pa. C.S. § 5524; *Wilson v. Garcia*, 471 U.S. 261 (1985). Defendants argue that because Jennifer Piccini died on November 12, 2011, the statute of limitations expired on November 12, 2013 and Spencer Pearce did not seek Letters of Administration (granting him the right to sue on behalf of her Estate) until March 7, 2016, so the action is time-barred. ECF No. 8, at 9. That argument has more than a few problems.

In fact, Spencer Pearce commenced the suit by filing a Writ of Summons in Pennsylvania state court on November 12, 2013. That is within the applicable statute of limitations. Assuming that the Defendants are right that Pearce lacked the capacity to sue at that point because he lacked Letters of Administration (an argument the Court will address shortly), that is not a fatal problem, at least now that we are here in federal court (at the Defendants' behest via removal). Federal Rule of Civil Procedure 17(a)(3)[3] provides that:

> [a] court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

---

[2] If this case were still in state court that would not seem to be a problem, as the Advisory Notes to Pa. R. Civ. P. 1018 indicate that dismissal based on a captioning flaw is disfavored.

[3] It is indisputable that the Federal Rules of Civil Procedure apply. *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court.").

4

That protection against dismissal "is designed to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought." *Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 562 (3d Cir. 2008) (quoting Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure, § 1555 (2d ed. 2008)). Critically, it "should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice." *Id.* This is just such a case.

If, at the time of filing the Writ of Summons, Spencer Pearce lacked the capacity to bring the suit via holding the Letters of Administration he was evidently entitled to, under Rule 17, he must be granted a reasonable amount of time to gain the proper status as trustee *ad litem* and/or personal representative of Jennifer Piccini's Estate.[4] This is not a case like *Gardner* where Rule 17 did not allow a later substitution of the real party in interest when there was a transfer of an interest by assignment. *See Gardner*, 544 F.3d at 562. In contrast, this is a case in which, by filing the Complaint, the real party in interest (the personal representative) ratified the actions, bringing it within the plain language of Rule 17(a)(3). *See In re Tylenol (Acetaminophen) Marketing, Sales Practices & Prods. Liability Litig.*, No. 2:13-md-02436, 2015 WL 7075812 (E.D. Pa. Nov. 13, 2015). Nor is it a case like those described in the Rule 17 Advisory Notes where a person sees a plane crash and sues the airline in the name of John Doe in the hope that at some later time, John Doe will transfer "his" claim to the opportunistic plaintiff. Instead, Spencer Pearce at all times sued to vindicate the rights of his deceased mother. Unlike the plaintiff in *Garnder*, he was in the line of succession, so to speak, as someone who could be a trustee *ad litem* and/or personal representative of the Estate—a conclusion bolstered by the fact that he indeed received Letters of Administration. *See* ECF No. 20-1. The Court concludes that if

---

[4] And he did get personal representative status before the Complaint was filed in state court and before the case was removed to this Court. ECF No. 20-1.

Spencer Pearce needed to do anything now to be designated as suing in the proper capacity (and based on the Court's reading of Pennsylvania law and Rule 17(a)(3), it does not appear that he has to, given that he has the Letters and has "ratified" the action), he must be granted a reasonable time to do so. The interests of justice weigh heavily in favor of not dismissing this case.

The person who would normally be entitled to be the trustee *ad litem* or Personal Representative of Jennifer Piccini's estate (her husband Michael Piccini) is a named Defendant in the case, and the allegations are that he played a significant role in her death. Further, Mr. Pearce alleges that the investigation into Ms. Piccini's death was slow-walked by the Allegheny County Police Department and District Attorney's Office, such that he could not reasonably know whether he had a valid cause of action until after the statute of limitations expired. ECF No. 1-3, at 8. Based on those alleged facts, and the fact that Mr. Pearce now has the appropriate Letters of Administration (and had them before the removed Complaint was filed in state court), the Court concludes that he is entitled to proceed to the next steps in this litigation.

The Defendants also argue that under Federal Rule of Civil Procedure 15(c)(1)(A) any amendment cannot relate back so the statute of limitations is still a bar to the suit going forward. ECF No. 8, at 9. Rule 15, however, does not apply to a case like this. *See Gardner*, 544 F.3d at 561–62 ("Rule 15(c)(1) is simply not applicable here, as, by its own terms, it applies only to amendments to the 'party . . . *against whom a claim is asserted*.'") (emphasis in original). Spencer Pearce does not seek to add a new party, only to ensure that he is designated as the proper one as contemplated by Rule 17.

Finally, the Court at this stage cannot rule out that the survival claims did not accrue at the moment of Jennifer Piccini's death. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("the

accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law.") (emphasis in original). Nor can the Court conclude at this stage that (1) state equitable tolling doctrines do not apply to Pearce's § 1983 claims or (2) state tolling doctrines do not conflict with federal law or policy such that the running of the statute of limitations was paused for a period of time anyway. "Under Pennsylvania's discovery rule, the statute of limitations should be tolled 'until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct.'" *Leonard v. City of Pittsburgh*, No. 2:13-cv-455, 2013 WL 4541727, at *5 (W.D. Pa. Aug. 27, 2013), *aff'd*, 570 F. App'x 241 (3d Cir. 2014) (quoting *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005)). It is possible that Ms. Piccini's Estate would not have reasonably discovered the alleged misconduct until after the statute of limitations had run, given the allegations that various authorities dragged their feet in providing critical information. Moreover, even if no Pennsylvania state tolling law applies, there remains the possibility that federal tolling applies. *See Leonard*, 2013 WL 4541727, at *9 (if "state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances.") (citing *Kach v. Hose*, 589 F.3d 626, 643 (3d Cir. 2009)).[5]

Essentially, the Defendants ask this Court to apply the "Third Circuit Rule" to use the statute of limitations affirmative defense as a vehicle to dismiss the case at the motion to dismiss stage. That rule "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir.

---

[5] Federal tolling principles may apply "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Leonard*, 2013 WL 4541727, at *9 (citing *Kach*, 589 F.3d at 643).

2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). But "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quoting *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978)). Here, given the bare (or really at this point nonexistent) factual record and considering the allegations of the Complaint in a light most favorable to the Plaintiff, the Court cannot conclude that a statute of limitations bar is facially and conclusively evident. Given the allegations in the Complaint, the Court cannot conclude now that no tolling/delay of accrual doctrine will not apply.[6] Thus, the Motion to Dismiss will be denied as to all substantive survival claims, without prejudice to the Defendants raising that defense at a later juncture.

### b. Wrongful Death Claim

That brings the Court to the state law wrongful death claim at Count VI. The Defendants argue that this claim is time barred for largely the same reasons as the survival claims, adding the argument that because Pennsylvania law says that the "discovery rule" does not *ever* toll the statute of limitations in wrongful death cases, Pearce cannot bring this claim now. ECF No. 8, at 11. However, the same Rule 17 analysis applies to this claim because the case is now in this Court.

On this point also, Judge Stengel's thorough and well-reasoned opinion in *In re Tylenol* leads the way. There, the court noted that "[c]ourts have routinely used Rule 17(a)(3) to allow a party bringing a wrongful death claim in her individual capacity to later be substituted by herself

---

[6] For instance, whether any delay in the release of information to Plaintiff's counsel was attributable to the Defendants, whether Plaintiff proceeded with appropriate dispatch in filing suit, whether there are extraordinary circumstances justifying tolling of the limitations period, or other similar fact-based inquiries under both state and federal tolling principles. *Kach v. Hose*, 589 F.3d 626 (3d Cir. 2009) (considering application of both state law and federal law tolling principles at the summary judgment stage); *Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 276 (3d Cir. 2006) ("whether a damaged party, exercising reasonable diligence, could ascertain that he has been injured, and by what cause, is a factual determination.").

in her official capacity as personal administrator." *Id.* at *7 (collecting cases from several districts and circuits). And in applying Rule 17 (which conflicted with the underlying state (Alabama) law), the court held that though the plaintiff had not been formally appointed as the personal representative of the estate until well after filing a Writ of Summons, she was nevertheless entitled to ratify the action after her formal appointment and after the statute of limitations had run. *Id.* at *14.[7] That same principle applies here.

And even as a matter of Pennsylvania law, it appears that according to *Usner v. Duersmith*, 346 Pa. 494 (1943), wrongful death plaintiffs are allowed to amend a caption to include their designation as trustee *ad litem* after the statute of limitations has run. Moreover, the Court does not believe that formal appointment by the Orphan Court as trustee *ad litem* is necessary under Pennsylvania law to bring a wrongful death action. The Defendants cite *Gudalefsky v. Nipple*, No. 1696-MDA-2014, 2015 WL 7016099 (Pa. Super. Ct. 2015) for that proposition. But in *Gudalefsky*, the Superior Court recognized that the complaint was defective because the plaintiff did "not claim to bring [the] action in a representative capacity *nor* [had] she been appointed a trustee ad litem." 2015 WL 7016099, at *3 (emphasis on the disjunctive added). However, the Superior Court also held that the defect was "not necessarily fatal" and cited to *Usner*. *Id.* at *3 n.6.[8] So while in *Gudalefsky* there was apparently no effort to sue in the

---

[7] In the *Tylenol* case, the Writ of Summons identified the plaintiff as personal representative of the estate, but she did not have the formal appointment when it was filed. Here, Spencer Pearce did not so identify himself in the caption, but the body of the Complaint that he subsequently filed (when procedurally pressed to do so by the Defendants) made crystal clear the capacity in which he was suing. The Defendants (who chose to be in this forum) have not identified any prejudice they have suffered or will suffer because of the mistaken omission in the caption and absent any prejudice, the Court will not dismiss the entire case on this basis. The essential facts, allegations, and parties are exactly the same whether Spencer Pearce was, or is now, designated as the personal representative or trustee *ad litem*. Further, the Court notes that Judge Stengel's analysis in the *Tylenol* case applies with equal and full force to the application of Rule 17 to the survival claims noted above.

[8] To the extent *Blackwood v. Wellspring Health*, Doc. No. 2012-SU-4256-74 (Ct. Comm. Pl. York Cty. 2013) is inconsistent with this result (and it does appear to the Court to be inconsistent), when applying Pennsylvania law the Court will harken back to the first-year hierarchy of authority rule. The Pennsylvania Supreme Court, which has the

proper capacity, here Spencer Pearce has Letters of Administration, has said that he sued "as trustee ad litem and as Personal Representative of the Estate of Jennifer Piccini," and merely omitted that designation from the caption. And under *Usner*, such a mistake is not fatal. *See also Miller v. Phila. Geriatric Ctr.*, 463 F.3d 266, 276–77 (3d Cir. 2006) (wrongful death actions are properly brought by child or personal representative).

The Motion to Dismiss will be denied without prejudice as to this Count.

### c. Qualified Immunity

The Defendants also half-heartedly raise qualified immunity as a defense. ECF No. 8, at 15. They essentially argue that in Tasering Jennifer Piccini (which is alleged to have killed her), the police officers were performing discretionary functions that are "shielded from liability for civil damages." *Id.* With no citation to legal authority, the Defendants at oral argument told the Court that simply because Jennifer Piccini held a drawn handgun (pointed to her own head) while she stood on police station property, the officers were entitled to use lethal force and to kill her.[9] This despite no pled facts suggesting that she threatened the officers (or anyone but herself) or was seeking to "escape," or was in the process of being arrested, nor even stating any such limiting principles in making the argument in open Court. This also despite what would appear to be the facially illogical argument that deploying lethal force to kill someone would be justified

---

ultimate say on what Pennsylvania law is, decided *Usner*. The Pennsylvania Superior Court decided *Gudalefsky*. Those courts provide the best guidance here.

[9] Defense counsel contended at oral argument that killing Jennifer Piccini in the police station parking lot would have been "justified" under state law. Pennsylvania law provides justification for the use of deadly force by law enforcement to prevent death or serious bodily injury to law enforcement or another person, or when law enforcement believes both that (a) such force is necessary to prevent an arrest from being defeated by resistance or escape and (b) the person to be arrested attempted a forcible felony or is attempting to escape while possessing a deadly weapon, or will otherwise endanger human life or inflict serious bodily injury unless arrested without delay. 18 Pa. C.S.A. § 508; *see also Tennessee v. Garner*, 471 U.S. 1, 3 (1985) (as a constitutional matter, law enforcement may use deadly force against a fleeing suspect to prevent escape when the officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."). It is not self-evident to the Court how the allegations of the Complaint come within the sweep of those provisions, but they may nonetheless apply as the record is developed in further proceedings.

in order to prevent that person from killing themselves. According to the Defendants, her open possession of a firearm while she stood in a police station parking lot in and of itself justified the use of lethal force against her as a matter of law. The Court declines to reach such a sweeping conclusion on this record and based on the straightforward application of settled state and federal law.

"[Q]ualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Put simply, qualified immunity protects 'all by the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Defendants make no attempt to define what right was, or was not, allegedly violated. They confuse the second prong (whether or not a reasonable state actor would have known she was violating a right) with the *non sequitur* of whether or not Michael Piccini and Nicholas Caito "acted in an unreasonable manner." Further, qualified immunity is an affirmative defense, so the Plaintiff "has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds." *Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006) ("the burden of pleading qualified immunity rests with the defendant, not the plaintiff.").

There is simply not enough of a factual record to decide whether these police officers are entitled to qualified immunity for their actions as pled. That is, whether the record would compel a finding at this point that they were or were not (a) plainly incompetent, (b) knowingly violating the law, (c) both, or (d) neither. There is no question that the use of excessive force in seizing a person can violate a clearly established constitutional right. *See, e.g.*, *Santini v. Fuentes*, 795

F.3d 410 (3d Cir. 2015) (vacating a grant of summary judgment on qualified immunity grounds in an excessive force case); *Curley v. Klem*, 298 F.3d 271 (3d Cir. 2002) (same). Here, at the earliest of the pleading stages, there are simply far too many open factual issues[10] to assess whether qualified immunity applies. The Motion to Dismiss on qualified immunity grounds will be denied without prejudice.

### IV. CONCLUSION

The Defendants' Motion to Dismiss is granted without prejudice as to Count VII and denied without prejudice in all other respects. The Plaintiff's Motion to Amend/Correct Caption is granted.

An appropriate Order will issue.

s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated: July 15, 2016
cc: All counsel of record

---

[10] At least the following factual issues: Was Jennifer Piccini a threat of death or serious physical injury to others? Were the Officers seeking to arrest Jennifer Piccini? Did Officer Michael Piccini act out of "public" or "private" motives in giving his order to Officer Nicholas Caito? Was Officer Caito compelled to follow Officer Michael Piccini's command to shoot his TASER? Was the force used by Officer Caito excessive at all in the circumstances? Did the use of the TASER make it all but certain that Jennifer Piccini would shoot herself in the head? Was the use of the TASER "deadly force," and if so, was Jennifer Piccini's death attributable to any Defendant? Was the use of force "justified" under Pennsylvania state law or under *Tennessee v. Garner* and its progeny?